## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARIA SCICCHITANO,              :        Civil No. 1:23-CV-299
                                :
    Plaintiff,               :
                                :
    v.                       :
                                :        (Magistrate Judge Bloom)
KILOLO KIJAKAZI,                :
Acting Commissioner             :
of Social Security,             :
                                :
    Defendant.               :

## MEMORANDUM OPINION

## I.  Introduction

Maria Scicchitano filed an application for disability and disability insurance benefits on February 12, 2020. Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Scicchitano was not disabled from her alleged onset date of April 7, 2018, through the date of the ALJ's decision, November 30, 2021.

Scicchitano now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence. After a review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

(2019), we conclude that substantial evidence supported the ALJ's findings in this case. Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.   <u>Statement of Facts and of the Case</u>

Maria Scicchitano filed for disability and disability insurance benefits, alleging disability due to post-traumatic stress disorder ("PTSD"), severe depression, anxiety, post-concussion syndrome, panic attacks, migraines, neck pain, ringing in her ears, dizziness, memory problems, and concentration and focus issues. (Tr. 70-71). She alleged an onset date of disability of April 7, 2018. (Tr. 71). Scicchitano was 47 years old at the time of her alleged onset, had at least a high school education, and had past relevant work as a psychiatric aide and a receiving clerk. (Tr. 28).

The medical record regarding Scicchitano's impairments revealed that she suffered an injury at work on April 7, 2018, when a patient struck her in the head with a lunch tray. (Tr. 604). She went to the emergency room complaining of neck pain and dizziness. (*Id.*). An examination was benign, and she was diagnosed with a low impact head

injury without red flag symptoms. (Tr. 605). She denied imaging at that time and was advised to use Tylenol, ibuprofen, and ice. (*Id.*). She followed up with her primary care provider in May of 2018, where it was noted she had been hurt at work.[1] (Tr. 444).

In November of 2018, Dr. Greco again noted that Scicchitano had suffered a concussion at work in April and that she suffered from anxiety and blurry vision. (Tr. 446). He diagnosed her with dizziness, post-concussion syndrome, and PTSD. (Tr. 447). In December, it was noted that Scicchitano had flickering and double vision, light-headedness, headaches, loss of balance, numbness, and memory problems. (Tr. 448). Dr. Greco also noted Scicchitano's depression, anxiety, nervousness, and fatigue. (*Id.*). At a follow-up appointment in January, treatment notes indicate that Scicchitano felt her headaches, neck pain, and chest pain were increased due to her anxiety. (Tr. 450). However, at this same time, treatment notes from the Balance Center indicate that her dizziness had

---

[1] As plaintiff's counsel has noted, Dr. Greco's handwritten notes prior to October of 2019 are extremely difficult to decipher. Nevertheless, we have endeavored to include these records to set forth a complete background of the plaintiff's medical impairments as it relates to her appeal.

3

"markedly improved" from onset. (Tr. 594). She had completed extensive balance rehabilitation, and she reported that her dizziness would be inactive for several days at a time. (*Id.*).

Treatment notes from Dr. Greco in April of 2019 indicate that he discussed Scicchitano's return to work status with her. (Tr. 454). At this visit, it was noted that Scicchitano was going to the pain clinic, and that she complained of severe neck pain. (*Id.*). Around this time, Scicchitano received interlaminar epidural steroid injections at the pain clinic. (Tr. 586). Scicchitano also underwent an initial neurological consultation for her headaches in April. (Tr. 579). Her neurological and psychiatric examinations were unremarkable, and she was diagnosed with post-traumatic headache without migrainous features, complicated by medication overuse headache. (Tr. 581-82, 584).

Scicchitano treated with Dr. Greco in June of 2019, at which time he noted that she continued to suffer from headaches, PTSD, agoraphobia, and memory problems. (Tr. 459). Later that month, Scicchitano presented to the emergency room complaining of right shoulder and lower back pain after lifting boxes at a yard sale. (Tr. 566-

4

67). Her neurological and psychiatric examinations were normal, and she was discharged the same day. (Tr. 569, 574). Several weeks later, Scicchitano received cervical medial branch nerve blocks and thoracic trigger point injections. (Tr. 560-61).

Scicchitano was seen by an ophthalmologist in August of 2019 for an eye examination related to her headaches. (Tr. 545). She reported that her headaches were centered behind her right eye, and they worsened in the evening and with activity. (*Id.*). She was diagnosed with chronic headaches, and it was noted that she had previous evaluations that were unable to identify the source. (Tr. 547). In September, Scicchitano followed up with the pain clinic, where it was noted that the nerve blocks and injections only temporarily relieved her pain. (Tr. 543).

At a visit with Dr. Greco in October, Scicchitano reported depression, anxiety, and memory loss. (Tr. 466). Her psychiatric examination was normal, and her neurological examination was unremarkable. (Tr. 467). Dr. Greco filled out Scicchitano's disability forms and encouraged her to take her medications and do physical therapy. (*Id.*).

At a visit with neurology in November of 2019, Scicchitano reported constant headaches and neck pain. (Tr. 530). It was noted that she was suffering from some memory, concentration, and word finding issues. (*Id.*). Scicchitano refused any type of injections, and it was noted that neurology had nothing else to offer her. (Tr. 533). The following day, Scicchitano presented to the emergency room complaining of neck pain after a motor vehicle accident. (Tr. 525). A CT scan of her brain showed no evidence of traumatic injury to the head and cervical spine. (Tr. 528). She was discharged and prescribed oxycodone for her pain. (Tr. 529).  At a follow up with Dr. Greco in December, Scicchitano reported worsening pain since the car accident but denied migraines, dizziness, and memory problems. (Tr. 472).

By January of 2020, Scicchitano had stopped all medications. (Tr. 474). On examination, she appeared to be in moderate distress and cried numerous times. (Tr. 476). Her psychiatric and neurological examinations were otherwise normal. (Tr. 476-77). Dr. Greco noted that Scicchitano refused to try medications for longer periods of time and was not interested in injections. (Tr. 477). It was also noted that the

6

neurologist wanted to do lumbar punctures but there was no evidence the procedure was ever scheduled. (*Id.*). At a neurology visit in February, treatment notes indicated that Scicchitano had never scheduled the lumbar puncture procedure, and that she was still not interested in injections or trying her medications for longer periods of time. (Tr. 511, 516). Her psychiatric and neurological examinations were unremarkable at this visit. (Tr. 512-13).

In June of 2020, Dr. Greco noted that Scicchitano had been under more stress recently because her doctors could not pinpoint what was causing her pain. (Tr. 487). Dr. Greco further indicated that Scicchitano had an abusive partner, who was physically and emotionally abusive toward her. (*Id.*). Scicchitano was extremely anxious and nervous, but a psychiatric examination was otherwise normal. (Tr. 488). Similarly, while Scicchitano reported problems remembering numbers, her neurological examination was unremarkable. (*Id.*). Despite these largely normal findings, Dr. Greco diagnosed Scicchitano with a traumatic brain injury and opined that she was unable to work in any meaningful employment. (Tr. 489).

Later in June, Scicchitano presented to the emergency room with an anxiety attack and related chest pain. (Tr. 506). On examination, she was very anxious. (Tr. 508). However, her psychiatric examination was otherwise normal, and her neurological examination showed no focal deficits. (*Id.*). She was discharged and advised to follow up with psychology. (Tr. 509). Scicchitano underwent an initial outpatient psychiatric evaluation in July of 2020 at Geisinger CMC. (Tr. 915). She reported worsening anxiety and ongoing headaches, and that she experienced anxiety attacks when she left her home. (Tr. 915-16). It was noted that she was seen by a state psychiatrist who opined that her symptoms began prior to her work incident two years earlier. (Tr. 916). A mental status evaluation revealed cooperative behavior, normal speech, dysthymic affect and mood, intact reasoning, goal directed thought processes, intact attention and concentration, and fair insight and judgment. (Tr. 921). She was started on Effexor and referred to therapy. (Tr. 923).

Scicchitano was seen at the Headache Center in July. (Tr. 868). On examination, she exhibited normal speech, as well as intact recent and

remote memory and attention and concentration. (Tr. 877). She was diagnosed with intractable chronic migraine without aura and without status migrainosus. (Tr. 878). She was started on Prednisone and counseled about medication overuse headaches and how medication overuse could negate the helpful effects of her medications. (Tr. 878-79).

In January of 2021, Scicchitano underwent a mental health status evaluation with Dr. Andrew Cole, Psy.D. (Tr. 855-61). Scicchitano reported difficulty sleeping, fatigue, and low motivation, as well as nightmares, hypervigilance, and anger outbursts. (Tr. 856). She further reported issues with memory and word finding since her injury. (*Id.*). She also stated that she did not socialize and had no hobbies. (Tr. 858). On examination, she was cooperative and well-groomed, her speech was fluent and clear, she had an anxious affect, and she had mildly impaired attention, concentration, and memory. (Tr. 857). Dr. Cole found that Scicchitano was able to tend to her personal care, cook, clean, shop, and manage her money, and noted she did not drive due to her headaches and dizziness. (Tr. 857-58). Dr. Cole opined that Scicchitano had mild

limitations in understanding and remembering complex instructions and moderate to marked limitations in interacting with others. (Tr. 859-60).

In April of 2021, Dr. Greco's treatment notes again reflected normal psychiatric and neurological examinations. (Tr. 996-97). Despite these findings, Dr. Greco again opined that Scicchitano could not engage in any meaningful employment due to her impairments. (Tr. 997). In June of 2021, Dr. Greco filled out a Mental Medical Opinion, in which he opined that Scicchitano was unable to meet competitive standards or had no useful ability to function in almost every mental ability or aptitude needed to perform even unskilled work. (Tr. 1051-52). He further opined that Scicchitano would be absent from work more than four days per month. (Tr. 1053).

Thus, it was against the backdrop of this record that an ALJ held a hearing on Scicchitano's disability application on October 28, 2021.[2] (Tr.

---

[2] This was the second hearing held by the ALJ, the first having been held on July 1, 2021. Due to technical issues, there was no recording made of the first hearing. Accordingly, at the supplemental hearing on October 28, 2021, the plaintiff agreed to have the ALJ summarize her testimony from the first hearing, and she offered additional testimony regarding her impairments. (Tr. 41-42).

35-69). Scicchitano and a Vocational Expert both appeared and testified at this hearing. (*Id.*). Following this hearing, on November 30, 2021, the ALJ issued a decision denying Scicchitano's application for disability benefits. (Tr. 15-30). The ALJ first concluded that Scicchitano had not engaged in substantial gainful activity since April 7, 2018, her alleged onset of disability. (Tr. 18). At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Scicchitano suffered from the following severe impairments: social anxiety disorder; panic disorder; agoraphobia; obesity; degenerative disc disease of the cervical spine; degenerative disc disease of the lumbar spine; and post-concussion syndrome with migraine headaches. (*Id.*). At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations. (Tr. 19-22).

Between Steps 3 and 4, the ALJ then concluded that Scicchitano:

[H]a[d] the residual functional capacity to perform light work
as defined in 20 CFR 404.1567(b), except she can frequently
stoop, kneel, crouch, use ramps, and climb stairs, and can
occasionally balance. She can perform jobs that do not require
crawling or climbing on ladders, ropes or scaffolding. She can
tolerate a moderate level of noise, such as the noise level of
most grocery stores or department stores. She can tolerate
occasional exposure to vibrations. She can perform jobs that

11

do not require exposure to hazards, such as unprotected heights and dangerous, moving machinery. She can perform jobs that would take no more than 30 days of training to learn with a specific vocational preparation level of one or two, which are generally classified as unskilled. She can understand, remember, and carry out simple instructions, and can perform simple and routine tasks. She can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting. She can have occasional interaction with coworkers and supervisors, but would be limited to rare/incidental contact with customers or members of the general public rare or incidental.

(Tr. 22).

In reaching this RFC determination, the ALJ considered the objective medical record detailed above, the medical opinion evidence, and Scicchitano's reported symptoms. Regarding Scicchitano's physical limitations, the ALJ considered the opinions of the state agency consulting physicians, Dr. Kurt Maas, M.D., and Dr. Crescenzo Calise, M.D., who both opined that Scicchitano could perform work at the light exertional level with some postural limitations. (Tr. 76, 89). The ALJ found these opinions persuasive, as they were consistent with the objective evidence showing normal physical examination findings during the relevant period. (Tr. 26).

Regarding Scicchitano's mental limitations, the ALJ considered the opinions of the state agency consultants, Dr. Valerie Rings, Psy.D., and Dr. Monica Yeater, Psy.D. (Tr. 26-27). Dr. Rings opined that there was insufficient evidence to evaluate the claimant's mental limitations, and the ALJ found this opinion unpersuasive. (Tr. 26). Dr. Yeater opined that Scicchitano had mild to moderate limitations in the broad areas of social functioning, which the ALJ found persuasive. (Tr. 27). The ALJ reasoned that these limitations were consistent with the unremarkable mental health findings in the record, as well as the claimant's decision to stop taking her mental health medications and the scant treatment for these mental health impairments during the relevant period. (*Id.*).

The ALJ also considered Dr. Cole's January 2021 opinion and found this opinion partially persuasive. (Tr. 27). The ALJ found Dr. Cole's marked limitations in interacting with others to be unsupported by the record. (*Id.*). However, the ALJ found that Dr. Cole's limitations regarding Scicchitano's abilities with respect to simple and complex instructions were supported by the records that showed Scicchitano had

13

some memory issues and were consistent with the otherwise largely unremarkable mental status findings. (*Id.*).

Finally, the ALJ considered Dr. Greco's June 2020, April 2021, and June 2021 opinions, in which he opined that Scicchitano was unable to perform any meaningful employment, and that she had almost no useful ability to function or was unable to meet competitive standards for almost all work-related abilities. (Tr. 27-28). The ALJ found these opinions unpersuasive, reasoning that Dr. Greco's extreme limitations were unsupported by and inconsistent with his own treatment records, which showed mostly normal psychiatric and neurological findings. (*Id.*).

With respect to Scicchitano's symptoms, the ALJ found that Scicchitano's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence. (Tr. 23-26). Scicchitano testified that she was unable to drive due to her headaches and vision problems, and that she suffered from anxiety, agoraphobia, and had problems with focus and concentration. (Tr. 43-44). She reported experiencing migraines three times per week, and that they worsened with loud noises or bright lights.

(Tr. 44-45). She testified that she was anxious when she left her home, that her depression made daily activities difficult, and that she had a friend help her take care of her dog. (Tr. 46-48). She reported an ability to do laundry on occasion and cook small meals, but that she never used the stove because she sometimes forgot to turn it off. (Tr. 48). She also stated that she had difficulties recalling words. (Tr. 49). At the time of the supplemental hearing, Scicchitano was no longer treating with her mental health providers and was only seeing Dr. Greco, her primary care physician. (Tr. 54).

The ALJ found Scicchitano's testimony to be inconsistent with the objective clinical findings. (Tr. 23-26). With respect to her post-concussion syndrome and headaches, the ALJ noted that the record contained largely unremarkable neurological findings, as well as intact attention, concentration, and memory. (Tr. 24). The ALJ further noted Scicchitano's scant treatment for her anxiety and depression, as well as the normal psychiatric examination findings throughout the relevant period. (*Id.*).

Having made these findings, the ALJ found at Step 4 that Scicchitano was unable to perform her past work but found at Step 5 that

Scicchitano could perform the occupations of a router, marker, and stock checker. (Tr. 29). Accordingly, the ALJ found that Scicchitano had not met the stringent standard prescribed for disability benefits and denied her claim. (Tr. 29-30).

This appeal followed. On appeal, Scicchitano presents two issues. She argues that the ALJ erred in his consideration of her subjective symptoms and in his consideration of Dr. Greco's medical opinions. This case is fully briefed and is therefore ripe for resolution. For the reasons set forth below, we will affirm the decision of the Commissioner.

III.   <u>Discussion</u>

   A. <u>Substantial Evidence Review – the Role of this Court</u>

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted). However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence. *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations." *Id.* Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings. In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for his decision. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind his or her decision with more than just conclusory statements. *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted). Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

**B.** Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a). This requires a claimant to show a severe physical or mental impairment that precludes [him/her] from engaging in previous work or "any other substantial gainful work which exists in the national economy." 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination, the ALJ follows a five-step evaluation. 20 C.F.R. §§404.1520(a), 416.920(a). The ALJ must

20

sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed impairment; (4) is able to do his or her past relevant work; and (5) is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also determine the claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1). In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2). Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence. *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from engaging in any past relevant work. *Mason*, 994 F.2d at 1064. If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience. 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination. While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, *see Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013), other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006). Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an ALJ

22

must always base his RFC on a medical opinion from a physician is misguided." *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence. *Biller*, 962 F. Supp. 2d at 778–79. These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence. *See Titterington*, 174 F. App'x 6; *Cummings*, 129 F. Supp. 3d at 214–15. Ultimately, it is our task to determine, considering the entire record,

whether the RFC determination is supported by substantial evidence. *Burns,* 312 F.3d 113.

### C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

The plaintiff filed this disability application in December of 2019 after Social Security Regulations regarding the consideration of medical opinion evidence were amended. Prior to March of 2017, the regulations established a hierarchy of medical opinions, deeming treating sources to be the gold standard. However, in March of 2017, the regulations governing the treatment of medical opinions were amended. Under the amended regulations, ALJs are to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in his or her written decision. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi*, 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022). Supportability means "[t]he more relevant the objective medical evidence and

24

supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason." *Mason*, 994 F.2d at 1066. Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated. *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016). On the other hand, in cases where no medical opinion credibly supports the claimant's

allegations, "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." *Cummings*, 129 F. Supp. 3d at 214–15.

### D. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

When evaluating lay testimony regarding a claimant's reported degree of pain and disability, the ALJ must make credibility determinations. *See Diaz v. Comm'r*, 577 F.3d 500, 506 (3d Cir. 2009). Our review of those determinations is deferential. *Id.* However, it is incumbent upon the ALJ to "specifically identify and explain what evidence he found not credible and why he found it not credible." *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) (citations omitted). An ALJ should give great weight to a claimant's testimony "only when it is supported by competent medical evidence." *McKean v. Colvin*, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015) (citations omitted). As the Third Circuit has noted, while "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." *Chandler v. Comm'r of Soc. Sec.,* 667 F.3d 356, 363 (3d. Cir.

26

2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled").

The Social Security Rulings and Regulations provide a framework for evaluating the severity of a claimant's reported symptoms. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. Thus, the ALJ must follow a two-step process: first, the ALJ must determine whether a medically determinable impairment could cause the symptoms alleged; and second, the ALJ must evaluate the alleged symptoms considering the entire administrative record. SSR 16-3p.

Symptoms such as pain or fatigue will be considered to affect a claimant's ability to perform work activities only if medical signs or laboratory findings establish the presence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16–3p. During the second step of this assessment, the ALJ must determine whether the claimant's statements regarding the intensity, persistence, or limiting effects of his or her symptoms are substantiated considering the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This

includes, but is not limited to, medical signs and laboratory findings; diagnoses; medical opinions provided by treating or examining sources and other medical sources; and information regarding the claimant's symptoms and how they affect his or her ability to work. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p.

The Social Security Administration recognizes that individuals may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p. Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations set forth seven factors that may be relevant to the assessment of the claimant's alleged symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: the claimant's daily activities; the "location, duration, frequency, and intensity" of the claimant's pain or symptoms; the type, dosage, and effectiveness of medications; treatment other than medications; and other factors regarding the claimant's functional limitations. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

## E. <u>The ALJ's Decision is Supported by Substantial Evidence.</u>

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154. Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Scicchitano first contends that the ALJ erred in his assessment of her symptoms, particularly as it relates to her headaches and the exacerbation of her underlying mental health impairments and how they affect her ability to function. She asserts that her testimony regarding her migraines is supported by Dr. Greco's opinion that she would be absent more than four days per month, and thus, the ALJ's failure to include this limitation is not supported by substantial evidence.

After consideration, we conclude that substantial evidence supports the ALJ's consideration of Scicchitano's subjective symptoms. While Scicchitano testified that her impairments, including her headaches,

29

substantially limited her ability to work, the ALJ considered the objective medical evidence and concluded that Scicchitano's testimony was inconsistent with the medical evidence. The ALJ recounted the medical evidence, which included objectively normal psychiatric and neurological findings during the relevant period. He discussed these objective findings, coupled with Scicchitano's activities of daily living and the fact that she stopped treating with her mental health providers and taking her medications. The ALJ reasoned that Scicchitano was not as limited as she alleged. Given the objective evidence in the record undermining the plaintiff's allegations regarding the severity of her impairments, the ALJ properly considered Scicchitano's symptoms but ultimately found that she was not as limited as she alleged. Thus, there is no basis for a remand on these grounds.

We similarly conclude that the ALJ's consideration of Dr. Greco's opinion is supported by substantial evidence. The plaintiff urges us to conclude that Dr. Greco's extreme limitations are supported by the record and compel a finding that she is unable to work. However, the ALJ discussed Dr. Greco's opinion and how his extreme limitations were

inconsistent with his own treatment records. The ALJ noted that Dr. Greco's treatment records consistently documented normal psychiatric and unremarkable neurological findings on examination. The ALJ reasoned that these unremarkable findings were entirely inconsistent with Dr. Greco's opinion that Scicchitano had no useful ability to function or was unable to meet any competitive standards.

Instead, the ALJ found the opinion of Dr. Cole, the examining consulting source, partially persuasive and found Dr. Yeater's opinion persuasive. The ALJ reasoned that these opinions and the limitations set forth therein, which found Scicchitano only mild to moderately limited in some areas of functioning, were more consistent with the objective medical record that contained largely unremarkable examination findings. The ALJ also found these limitations were supported by the fact that Scicchitano stopped attending mental health treatment and taking her medications. Regarding Dr. Cole's moderate to marked limitations regarding interaction with others, the ALJ explained how the objective medical evidence did not support such an extreme limitation.

Although there were some abnormal findings during the relevant period, such as notes documenting Scicchitano's subjective complaints of pain and her anxiety and depression, we are not permitted at this stage to reweigh the evidence, *Chandler*, 667 F.3d at 359, and instead must simply determine whether the ALJ's decision was supported by "substantial evidence." *Biestek*, 139 S. Ct. at 1154. Given that the ALJ considered all the medical opinion evidence and adequately explained why he found each one persuasive or unpersuasive, we find no error with the ALJ's consideration of the opinion evidence.

Accordingly, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case and this decision should be affirmed.

## IV.   Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

Submitted this 28th day of November 2023.

<u>*s/ Daryl F. Bloom*</u>
Daryl F. Bloom
United States Magistrate Judge